IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEREK J.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 22 C 5490 |
| v. | ) |
| | ) Magistrate Judge Gabriel A. Fuentes |
| MARTIN O'MALLEY, | ) |
| Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**[3]

Before the Court is Plaintiff Derek J.'s memorandum in support of reversing or remanding the Administrative Law Judge's ("ALJ") decision denying his application for disability benefits (D.E. 12) and Defendant's motion to affirm the ALJ's opinion (D.E. 14).

**I.   Procedural History**

Plaintiff applied for child disability insurance benefits ("CDIB") and an application for supplemental security income benefits ("SSI") in May 2020, alleging a disability onset date of July 25, 1993 and later amended to May 13, 2015. (R. 39, 70.)[4] The ALJ held a hearing on November

---

[1] The Court in this order is referring to Plaintiff by his first name and first initial of his last name in compliance with Internal Operating Procedure No. 22 of this Court. To the extent the Court uses pronouns in this order, the Court uses those pronouns used by the parties in their memoranda.

[2] The Court substitutes Martin O'Malley for his predecessor, Kilolo Kijakazi, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On July 10, 2023, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 20.)

[4] To be eligible for CDIB, a claimant must be over the age of 18, and disability must have predated their 22nd birthday. 20 C.F.R. § 404.350(a). The standards for awarding SSI follow the same framework, without the requirement that a claimant show disability prior to a certain age.

18, 2021, and on December 1, 2021, issued a written decision denying Plaintiff's application, finding him not disabled under the Social Security Act (the "Act").[5] This appeal followed.

## II.  ALJ Opinion

The ALJ analyzed Plaintiff's claim using the Social Security Administration's ("SSA") five-step sequential evaluation process. At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date. (R. 19.) At Step Two, the ALJ determined that Plaintiff had the severe impairments of obesity, neurodevelopment disorder, depression, and anxiety. (R. 20.) At Step Three, the ALJ concluded that Plaintiff's impairments, alone or in combination, did not meet or medically equal the severity of one of the SSA's listed impairments. (*Id*.) In making that finding, the ALJ conducted a Paragraph B analysis and determined that Plaintiff had moderate limitations in all four functional areas: understanding, remembering and applying information, interacting with others, concentrating, persisting, and maintaining pace, and adapting and managing himself. (R. 20-21.)

Next, the ALJ assigned Plaintiff a residual functional capacity ("RFC") to perform sedentary work except he can lift and/or carry up to 10 pounds occasionally and lighter weights frequently; he has no limitations in his total ability to sit throughout an eight-hour workday; can stand and/or walk off and on for a total of two hours out of an eight-hour work day; can occasionally climb ramps and stairs, and can occasionally stop, kneel, balance, crouch and crawl; can never climb ladders, ropes or scaffolds; and is limited to working in non-hazardous environments (*i.e.* no driving at work, operating moving machinery, working at unprotected heights or around exposed flames and should avoid concentrated exposure to unguarded hazardous

---

[5] The Appeals Council subsequently denied review of the opinion (R. 1), making the ALJ's decision the final decision of the Commissioner. *Butler v. Kijakazi*, 4 F.4th 498, 500 (7th Cir. 2021).

machinery.) (R. 22.) Moreover, he is limited to simple, routine tasks involving no more than occasional and minor changes in the work setting; can perform work performed at a consistent production rate; and is further precluded from work involving direct public service, in person or over the phone. (*Id.*). At Step Four, the ALJ concluded that Plaintiff did not have any past relevant work (R. 24), but at Step Five, the ALJ found that there were jobs that existed in the national economy that Plaintiff could perform, and that he was not disabled under the Act. (R. 25.)

### III.     Legal Standard

An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id.* at 1054. The Seventh Circuit added that "[a]t times, we have put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion.'" *Id.* (citation omitted). The Seventh Circuit further has clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469 (7th Cir. 2024). The district court's

3

review of the ALJ's conclusions "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

IV. **Analysis**

Plaintiff argues that the ALJ made a number of errors analyzing the evidence he cites in support of his RFC. The Court agrees to the degree that the ALJ's rejection of the opinions of Plaintiff's treating doctors was not supported by substantial evidence. Because we remand based on that issue, we do not reach Plaintiff's other arguments.

A. **The ALJ's Analysis of the Opinion Evidence Was Not Supported by Substantial Evidence.**

The ALJ's primary support for his mental RFC came from the opinions of the two state agency psychological consultants, who opined that Plaintiff had the ability to interact with others sufficiently in a work setting with reduced social demands but could not work with the general public on an ongoing, continuous basis, and that he could also adapt to simple, routine changes and pressures in the workplace. (R. 24.) The ALJ gave controlling weight to these opinions because he found they were "supported by the claimant's neurophysiological testing, school and classroom struggles, and testimony and record of fluctuating mood stabilizations." (*Id.*)

After giving controlling weight to the state agency opinion, the ALJ noted that the medical evidence included seven treating medical source statements from Plaintiff's psychiatrist and psychologist which, as summarized by the ALJ, indicated either marked or extreme limitations in mental functioning (which the ALJ does not describe),[6] expectations of being off-task 25 percent

---

[6] The ALJ cites the seven opinions only by exhibit number and does not describe, discuss, summarize or differentiate between them in any way. The Court will not scour the record to try to figure out exactly what each opinion said about Plaintiff's marked or extreme mental limitations and is unable to determine what evidence the ALJ considered when making his conclusions. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir.

4

or more of the time, and that Plaintiff would miss six to 10 days of work per month. (R. 24.) The ALJ globally found all of these opinions unpersuasive even though they were "expressed by specialists who were familiar with the claimant over time" because "the degree of limitations described in [the] opinions is inconsistent with the severity documented in the treatment records and they lack adequate support or detail." (*Id.*) More specifically, the ALJ stated that the claimant's physical examinations and objective testing "showed no more than moderate limitations that had been improved by conservative treatment." He cited to four pages from a single treatment note as evidence that Plaintiff's treatment records were inconsistent with all seven of the opinions and provides no explanation for what makes those seven opinions lacking in either support or detail.

The ALJ's justification for giving no weight to the seven opinions of Plaintiff's treating mental health providers rests on several faulty and unsupportable conclusions that go beyond a mere disagreement with the way the ALJ weighed the evidence. The few record pages the ALJ cited in support of his conclusion do not say what he said they say, and the Court is thus unable to determine why he rejected all of the opinions of Plaintiff's treating doctors. Moreover, as we explain below, this error also affects the ALJ's reliance on the opinions of the non-examining state agency doctors because the ALJ's reason for giving these opinions controlling weight relied on the same faulty evidence.

When considering what weight to give each medical opinion, the ALJ was required to "evaluate the persuasiveness of each medical opinion based on certain factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5)

---

2014). Rather, it is up to the ALJ to articulate the relevant evidence and explain how that evidence supports his ultimate determination. *Id. See also, Noonan v. Saul*, 835 F. App'x 877, 880 (7th Cir. 2020).

other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)). ALJs must explain how they considered the first two factors (supportability and consistency) and may but are not required to explain their consideration of the other factors. 20 C.F.R. § 404.1520c(b)(2).

Even assuming that the ALJ "minimally articulated" his reasons for rejecting the seven treating opinions with this explanation, (and the Court has concerns about whether it could even identify what treatment records the ALJ considered inconsistent with the opinions beyond the single record he cited), on a more fundamental level, the evidence the ALJ cites does not support the ALJ's conclusions, as the Court explains further below.

The single treatment note that the ALJ cited as "inconsistent" with the treaters' medical opinions is from a March 2021 appointment with Plaintiff's psychiatrist, Steve Lee, M.D. On the four pages cited by the ALJ, Dr. Lee notes under the "history of present illness" section that Plaintiff's mood was "labile/less anger" and better when Plaintiff was on the drug Lamictal, that although he had mild mood elevations triggered by "anime/being happy," the elevation lasted less than one day, and that he had "low physical and emotional stamina and stress tolerance, not very good self care, may be disabled to some degree and seems unlikely he could live independently." (R. 1109.) The other three pages of this record were a standard review of systems that note Plaintiff's general appearance and behavior were cooperative and his attitude appropriate, that his emotional state and affect were "depressed," his judgment and insight "fair" and he did not have hallucinations or present as delusional. (R. 1111-1113.)

Even accepting that Plaintiff may have shown improvement at this particular appointment, the Court is unable to determine why the ALJ found that this treatment record demonstrated that all seven of the treaters' opinions were inconsistent with the evidence.[7] That is, the fact that Plaintiff's treating psychiatrist noted a better mood when Plaintiff took a particular medication does not contradict the opinion(s) that Plaintiff would be off-task for up to 25 percent of the day and had marked limitations in his mental capabilities. And as discussed above, the Court has difficulty evaluating the ALJ's findings because the ALJ did not describe at all what those marked limitations are or which of Plaintiff's two treaters opined to them. Instead, the Court is left with a single treatment note from Dr. Lee that casts doubt on Plaintiff's ability to live independently, plus the ALJ's determination that this is somehow inconsistent with seven opinions that say Plaintiff has a number of marked limitations in his mental functioning. This aspect of the ALJ's rationale is articulated less than minimally, in that it is not enough to allow the Court to conduct a meaningful review of the ALJ's reasoning for rejecting the treaters' opinions.[8] The Court is not a

---

[7] While the ALJ is permitted to consider a claimant's improvement on treatment in determining RFC, in this case, the evidence shows that even when taking Lamictal (the only medication in the record that apparently improved some of Plaintiff's symptoms), Plaintiff still experienced "mild mood elevation (which appears to be a negative symptom of mania), insomnia, impulsive behaviors, anxiety, and low energy." He was further noted to be unmotivated and have low emotional stamina and stress tolerance. (R. 23.)

[8] The ALJ's Paragraph B analysis offers little additional insight into his thinking because the reasons the he provides for finding Plaintiff only has moderate limitations in all function areas are not relevant to his determinations. For example, he states that Plaintiff has no more than moderate limitations in concentration persistence, and pace because he was able to play video games on his computer and his IQ and verbal comprehension were in the high to average range. But intellectual ability is not an indicator of whether an individual is able to concentrate on and persist with a task, particularly in light of evidence of symptoms of depression, low energy, impulsivity and Plaintiff's probable inability to live on his own. *See, e.g., Amyha S. v. Kijakazi*, No. 20 CV 6330, 2023 WL 5720984, at *6 (N.D. Ill. Sept. 5, 2023). *See also, Voigt v. Colvin,* 781 F.3d 871, 878 (7th Cir. 2015) (ability to play online video games does not establish ability that claimant had mental capacity to perform full-time work). And the ALJ's reasoning for finding that Plaintiff had moderate limitations in his ability to adapt and manage himself is even less tethered to the evidence; the ALJ points out that claimant had never been fired from a job due to not getting along with other and was cooperative with his medical providers. (R. 21.) But these reasons, even if true, speak to Plaintiff's ability to interact with others, not his ability to adapt and manage himself.

rubber stamp of ALJ decisions, particular those lacking in sufficient explanation for departing from seven medical opinions cutting against the ALJ's final conclusions.

In a similar vein, the ALJ also wrote that the seven treating doctors' opinions are inconsistent with "objective testing" Plaintiff underwent (and that consisted of three days of neuropsychological evaluations in 2017) because the tests show "no more than moderate limitations" in Plaintiff's ability to function. But the Court is unclear how the ALJ decided that the testing report describes only moderate limitations, in that such an assessment appears nowhere in the report. Instead, as with Dr. Lee's treatment note, a number of the report's findings and recommendations are consistent with the treaters' opinions that Plaintiff would be absent six to 10 days per month or off-task 25 percent of the work day.[9] Specifically, the testing report states explains that although Plaintiff engaged with examiners at the start of each day of testing, he became fatigued as each day progressed, which caused him to experience difficulties engaging in tasks, request that testing end early, become overwhelmed by task demands and leave the room, and ultimately wait several weeks before returning to complete the evaluation. (R. 419.)

The ALJ decision does not minimally articulate what aspects of the testing results are inconsistent with the treaters' opinions. Notably, the ALJ cited to only two pages of the nine-page report: those that contain assessment of Plaintiff's objective test results such as verbal comprehension, working memory, processing speed, oral language, reading comprehension, and math fluency, which fluctuate from average or above average in language and well below average in math. The ALJ completely ignored the testing report's recommendations, which are based on the entire body of the three days of testing, not only Plaintiff's purely intellectual capabilities, as opposed to functional limitations. As relevant here, the testing report recommended:

---

[9] Indeed by lumping together all seven opinions ALJ makes it difficult to assess his consideration of them at all.

8

- 50 percent additional time for academic tests and quizzes;
- Work in a low-stimulus environment, free from visual and auditory distractions;
- Dividing (academic) work into smaller segments of 40 to 50 minutes of work followed by 10- to 15-minute breaks;
- Taking a reduced academic load as Plaintiff transitions into academic work, due to his tendency to become easily overwhelmed and frustrated. (R. 425.)

The ALJ does not acknowledge any of the assessments or recommendations that concern Plaintiff's mental health apart from his intellect, other than to say that the fact that Plaintiff received accommodations for college-level courses does not establish an inability to perform simple, routine, work tasks. (R. 22.) Perhaps not, but as far as the evidentiary record in this case is concerned, nothing in the testing report suggests Plaintiff *could* perform simple, routine work tasks or that the treaters' opinions about Plaintiff's off-task time are wrong. The ALJ plainly relies on the testing report and its recommendations for accommodations to argue that the treating doctors' opinions are inconsistent and unsupported. He cannot then pick out the parts of that report that *do* support those opinions and say they do not matter. Either the ALJ relies on the report, or he does not.

These same errors with respect to the ALJ's selective treatment of the neuropsychological testing report affected his decision to give controlling weight to the opinions of the state agency doctors. In this case, the ALJ wrote that he found the state agency opinions persuasive because they were supported by Plaintiff's testing, his school and classroom struggles, and testimony and record of fluctuating mood stabilization. But again, the testing report supports more significant limitations than the state agency doctors opined. For example, Plaintiff became fatigued and frustrated during the course of each day of testing to the point that he insisted on leaving early and

9

had to take a break of several weeks between testing days two and three; as described above, post-testing recommendations included 10- to 15-minute breaks after less than an hour of schoolwork and a "low stimulus" environment. Yet, the state agency consultants opined that Plaintiff was "not significantly limited" in his ability to work in coordination with or in proximity to others without being distracted by them or in his ability to complete a normal workday and work week without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (R. 91, 117.) These state agency opinions are squarely at odds with the testing report's findings.

In short, the Court finds that the majority of the evidence the ALJ cited in support of the RFC is based on unsupported or inaccurate interpretations of the record and thus cannot constitute "substantial evidence." Therefore, the Court must remand.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's memorandum in support of remand (D.E. 12) and denies Defendant's motion to affirm (D.E. 14).

**SO ORDERED.**

                ENTER:

                _____
                **GABRIEL A. FUENTES**
                U.S. Magistrate Judge

**Dated: July 22, 2024**